# In the United States Court of Federal Claims

No. 18-1133T
(Filed: November 9, 2026)
**FOR PUBLICATION**

| | |
|---|---|
| WILLIAM FRENCH ANDERSON and KATHRYN D. ANDERSON, | * |
| Plaintiffs, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*Charles D. Harrison*, Eagleton, Eagleton, & Harrison, Inc., Tulsa, OK, for Plaintiffs.

*Alex Schulman*, Trial Attorney, Tax Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant. Also on the briefs were *Brett A. Shumate*, Assistant Attorney General, *Joshua Wu*, Deputy Assistant Attorney General, and *David I. Pincus*, Deputy Director.

## OPINION AND ORDER

Plaintiffs William French Anderson and Kathryn Anderson, husband and wife, allege that they are entitled to a refund of income taxes after the Internal Revenue Service ("IRS") disallowed their business-expense deductions for certain legal fees. Compl. ¶¶ 3, 6, 12, 14 (ECF 1); *id.* Ex. B, at 88. Defendant's motion for summary judgment is ripe for decision, and I heard argument. *See* Def.'s Mot. for Summ. J. (ECF 46) ("Def.'s Mot."); Pls.' Opp'n (ECF 47); Def.'s Reply (ECF 48); Oral Argument Transcript (ECF 63) ("Tr."). Plaintiffs are collaterally estopped from raising their claim, which in any event involves matters outside this Court's subject matter jurisdiction. The government's motion for summary judgment is therefore **GRANTED**.

## BACKGROUND

William French Anderson is a physician, pediatric specialist, and geneticist. Pls.' Opp'n at 1–2; *People v. Anderson*, 144 Cal. Rptr. 3d 606, 609, 617 (Cal. Ct. App. 2012) ("*Anderson I*"), *as modified on denial of reh'g* (Aug. 23, 2012). His wife Kathryn

is a doctor as well, Pls.' Opp'n at 2, but because the underlying facts of the case do not concern her directly, I refer to him as "Dr. Anderson."

In 2006, a California jury convicted Dr. Anderson of sexually abusing a minor — the daughter of a colleague at his laboratory — while providing her with karate instruction and academic tutoring at his home. *Anderson I*, 144 Cal. Rptr. 3d at 609. The judgment was affirmed on appeal. *Id.* at 640.

Dr. Anderson has spent the last two decades unsuccessfully pursuing post-conviction remedies in state and federal courts. *See, e.g.*, Def.'s Mot. at 5–6; *In re Anderson*, No. B232746, 2013 WL 4759680 (Cal. Ct. App. Sep. 5, 2013) ("*Anderson II*"); *Anderson v. Perez*, No. CV 14-09463, 2016 WL 8078147 (C.D. Cal. Nov. 8, 2016) ("*Anderson III*"), *report and recommendation adopted*, 2017 WL 379400 (C.D. Cal. Jan. 24, 2017) ("*Anderson IV*"). A state-court petition claiming actual innocence is currently pending. *See* Pls.' Opp'n Ex. D (ECF 47-4) (Pet. to Set Aside Conviction, *People v. Anderson*, No. BA255257 (Cal. Super. Ct. L.A. Cnty. Jan. 29, 2024)) ("Pet. to Set Aside Conviction").

One post-conviction theory advanced by Dr. Anderson, and central to this case, is that he is the victim of an elaborate scheme by the Chinese government to frame him and steal his intellectual property concerning a cancer drug he was developing. *See*, *e.g.*, Pls.' Status Report at 3 (ECF 38); Tr. at 25, 31. He claims that he is in fact innocent and that the evidence against him was falsified. *See* Pls.' Opp'n at 2–3, 7, 11–13, 20–23; *see also* Pet. to Set Aside Conviction at 2.

According to Plaintiffs, if Dr. Anderson's criminal charges and conviction are nothing more than an intellectual-property theft plot, at least some of his post-conviction legal fees are business expenses. Pls.' Opp'n at 15–16. Specifically, Plaintiffs claim that legal fees paid to Dr. Anderson's attorney, Mr. Douglas W. Otto, for habeas representation between 2011 and 2014 constitute deductible business expenses under 26 U.S.C. § 162. Compl. ¶¶ 6, 9, 12, 15–16; *Anderson v. Comm'r*, T.C. Memo. 2023-42, No. 23789-16, 2023 WL 2660324, at *4 (Mar. 28, 2023) ("*Anderson V*"), *aff'd*, No. 23-9002, 2024 WL 2239160 (10th Cir. May 17, 2024) ("*Anderson VI*"); *see also* Tr. at 23.

A taxpayer may deduct from his income "ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." 26 U.S.C. § 162(a). An "ordinary and necessary expense" is one which, under the totality of circumstances, is "appropriate and helpful to the taxpayer's business and that results from an activity which is a common and accepted practice." *Amdahl Corp. v. Comm'r*, 108 T.C. 507, 523 (1997) (citation omitted). When (as here) the claimed deduction consists of legal fees, whether those fees are attributable to the taxpayer's business

depends on the "origin and character of the claim underlying the expense incurred." *Dana Corp. v. United States*, 174 F.3d 1344, 1350 (Fed. Cir. 1999) (citing *United States v. Gilmore*, 372 U.S. 39, 49 (1963)).

Plaintiffs have filed two separate actions seeking to characterize Dr. Anderson's legal fees as business expenses.

In the first, they petitioned the United States Tax Court to avoid paying deficiencies assessed by the IRS for tax years 2013 and 2014. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *5. Plaintiffs claimed that new evidence discovered in 2013 and 2014 revealed an "extensive scheme by Dr. Anderson's former colleague to sabotage his business and steal his intellectual property." *Id.* They argued that the ultimate cause of the charges brought against Dr. Anderson — and by extension the legal fees he paid — was his professional work in medical research. *Id.*

Plaintiffs lost that argument. In an evidentiary order, the Tax Court reasoned that it lacked "jurisdiction to redetermine Dr. Anderson's guilt or innocence of the criminal charges for which he was convicted." *See* Def.'s Mot. Ex. 10 (ECF 46-10) (Order, *Anderson v. Comm'r*, No. 23789-16, at 4 (T.C. Aug. 31, 2021) (resolving the government's motion in limine to exclude expert reports supporting Plaintiffs' innocence claims)). While the Tax Court had jurisdiction to address Plaintiffs' claim "that the criminal charges originated in connection with Dr. Anderson's gene therapy business or that the legal expenses were otherwise related to that business," it made clear that Plaintiffs "may not … attempt to relitigate the criminal case itself." *Id.* at 5; *see also Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *5 n.11.

As a result, when it came to the merits, the Tax Court held that the activities underlying Dr. Anderson's conviction were "personal, occurring at petitioners' private residence and arising out of Dr. Anderson's personal relationship with his former employee and her daughter." *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *6. "The charges did not involve Dr. Anderson's gene therapy business or any other trade or business or activity engaged in for the production or collection of income." *Id.* Accordingly, any connection between the legal fees and his occupation was "tangential." *Id.*

Plaintiffs raised a narrower alternative argument that their legal fees and certain payments to an IT consultant were deductible because they were "incurred entirely to investigate the conduct of Dr. Anderson's former colleague." *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *6. The Tax Court agreed that "investigation into and analysis of the alleged malfeasance by [Dr. Anderson's colleague] directly pertain to Dr. Anderson's gene therapy business, and legal fees expended specifically to those ends are deductible business expenses." *Id.* But the

Tax Court mostly rejected the argument as "inconsistent with the evidence," which demonstrated that Plaintiffs' legal fees were incurred not to "research[], investigat[e], or analyz[e] the corporate sabotage or espionage allegations," but to pursue a state habeas appeal. *Id.* The Tax Court allowed Plaintiffs to deduct $13,000 paid directly to the consultant for "legal advocacy," "promotion of Dr. Anderson's business image," and "work performed in the course of his investigation." *Id.* at *7.

Plaintiffs' other action is the one in this Court. For tax years 2011 and 2012, Dr. Anderson first paid his assessed taxes, Compl. ¶¶ 5, 11; *id.* Ex. A, at 31–54, 68–87 (originally filed tax returns for 2011); *id.* Ex. C, at 115–37, 151–68 (originally filed tax returns for 2012), then filed an administrative refund request with the IRS. Compl. ¶¶ 6, 12; *id.* Ex. A, at 6–30, 55–67 (amended tax return and refund request for 2011); *id.* Ex. C, at 90–114, 138–50 (amended tax returns for 2012). In both his 2011 and 2012 requests, he wrote "the taxpayer has incurred and deducted legal fees associated with criminal charges originating from his trade or business." Compl. Ex. A, at 20–21; *id.* Ex. C, at 104–05.

After the IRS denied his refund requests, Compl. ¶¶ 8, 14; *id.* Ex. B, at 88, Plaintiffs filed suit in this Court to recover the taxes paid. The government's motion for summary judgment followed.

## DISCUSSION

### I. Standard of Review

As the party moving for summary judgment, the government must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). "[A]ll evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable factual inferences should be drawn in favor of the nonmoving party." *Dairyland Power Co-op. v. United States*, 16 F.3d 1197, 1202 (Fed. Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Summary judgment is appropriate if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

To claim an income tax deduction, "the burden of clearly showing the right to the claimed deduction is on the taxpayer." *Principal Life Ins. Co. & Subsidiaries v. United States*, 116 Fed. Cl. 82, 100 (2014) (quoting *Interstate Transit Lines v. Comm'r*, 319 U.S. 590, 593 (1943)).

## II. Collateral Estoppel

Plaintiffs are seeking a tax refund based on the alleged deductibility of legal expenses during the 2011 and 2012 tax years. Compl. ¶¶ 9, 15. The question whether Dr. Anderson's legal fees for the 2013 and 2014 tax years constitute deductible business expenses has already been addressed by the Tax Court — and resolved against Plaintiffs. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324. Because Plaintiffs have identified no material factual or legal differences between this case and the Tax Court case, Dr. Anderson is collaterally estopped from relitigating the issue.

### A. Legal Standard

The doctrine of collateral estoppel bars revisiting past court decisions when: "(1) the issue to be decided is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) the parties had a full and fair opportunity to litigate the issue in the first action." *Arkla, Inc. v. United States*, 37 F.3d 621, 624 (Fed. Cir. 1994) (citing *Mother's Rest., Inc. v. Mama's Pizza, Inc.*, 723 F.2d 1566, 1569 (Fed. Cir. 1983)). The parties mainly agree that the first of those elements is dispositive in this case. *See* Tr. at 15, 45.

The Supreme Court has developed a special test for identicality in cases involving different tax years: To determine whether issues are identical from one tax year to another, courts consider whether the factual and legal settings are "separable." *Comm'r v. Sunnen*, 333 U.S. 591, 601 (1948); *Peck v. Comm'r*, 904 F.2d 525, 527–28 (9th Cir. 1990).[1]

"Separability" has not been comprehensively defined, but it appears that tax years are separable in two different situations. First, tax years are separable when they are governed by different legal rules, *see Sunnen*, 333 U.S. at 599–600, involving a change in the "legal relationship between [the parties]," *Sw. Expl. Co. v. Riddell*, 362 F.2d 833, 837 (9th Cir. 1966), or a "significant change in the legal climate," *Arkla*, 37 F.3d at 625 n.4 (citing *Montana v. United States*, 440 U.S. 147, 161 (1979) (itself quoting *Sunnen*, 333 U.S. at 606)); *see also Peck*, 904 F.2d at 528–29; *Hercules Powder Co. v. United States*, 167 Ct. Cl. 639, 644–45 (1964). Second, tax years are separable when there is a material difference in their "controlling facts." *Sunnen*, 333 U.S. at

[1] Separability is not the same as the ordinary collateral estoppel identicality standard. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 172 n.5 (1984). In tax cases, though, it applies until *Sunnen* is overruled. *See Rodriguez de Quijas v. Shearson/Am. Exp. Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, [a court] … should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

599–600; *see also Coleman v. Comm'r,* T.C. Memo. 1990-509, No. 48659-86, 1990 WL 138134 (Sep. 25, 1990); *Berry v. Comm'r*, T.C. Memo. 1990-646, No. 23782-88, 1990 WL 212178 (Dec. 27, 1990).

**B. Application**

Plaintiffs' arguments hardly bear on the separability analysis at all. Plaintiffs do not point to any difference in the legal standard applicable to tax years 2011 and 2012 as opposed to tax years 2013 and 2014. Tr. at 41–42. That leaves no difference in Plaintiffs' legal obligations, nor a "significant change in the legal climate" that might distinguish the years. *Arkla*, 37 F.3d at 625 n.4.

As for factual distinctions, the government has argued that the facts of the 2013 and 2014 tax years addressed by the Tax Court are not separable from those of the 2011 and 2012 tax years presented here. Plaintiffs should have pointed to facts establishing some difference, *see CanPro Invs., Ltd. v. United States*, 165 Fed. Cl. 397, 408 n.15 (2023) (citing RCFC 56(e) and *Celotex*, 477 U.S. at 322), but have not done so. The *only* evident difference is the tax years alone, which is not enough by itself to establish separability. *See Sunnen*, 333 U.S. at 599–600; *Coleman*, T.C. Memo. 1990-509, 1990 WL 138134 (quoting *Calcutt v. Commissioner*, 91 T.C. 14, 21 (1988) (itself citing *Gammill v. Commissioner*, 62 T.C. 607, 613 (1974))).

The specifics do not help Plaintiffs either. The Tax Court found that Dr. Anderson's criminal acts and associated expenses were unrelated to his business. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *6. That is a finding about historical facts that predate the tax years at issue: Whether Dr. Anderson is innocent or guilty as a factual matter, the nature of his charged conduct must be the same for all subsequent tax years. On that issue, there is no way to establish a difference *between the tax years*, as the separability test requires. *See Peck*, 904 F.2d at 528; *Sw. Expl. Co.*, 362 F.2d at 837.

At an even more detailed level, Plaintiffs have also failed to produce evidence that the purposes of their 2011 or 2012 legal expenses were different from those of the 2013 and 2014 expenses reviewed by the Tax Court. The Tax Court "found … no evidence" that Plaintiffs' payments to Mr. Otto in 2013 and 2014 "were incurred to investigate Dr. Anderson's former colleague's potential sabotage and intellectual property theft." *See Anderson VI*, 2024 WL 2239160, at *4 (summarizing and affirming the Tax Court's decision). Plaintiffs do not argue that Mr. Otto's time entries changed from tax years 2011 and 2012 to 2013 and 2014, nor that the nature of his work changed. Tr. at 30–31. That leaves Plaintiffs stuck with the Tax Court's conclusion that their legal fees were factually unrelated to Dr. Anderson's business. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *6.

To the extent there is any difference between the tax years, it does Plaintiffs no good at all. Plaintiffs told the Tax Court that the investigations of potential IP theft arose from "new evidence discovered in 2013 and 2014." *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *5. But this case concerns tax years 2011 and 2012. *See* Compl. ¶¶ 9, 15. Plaintiffs do not argue here that the evidence was discovered any earlier than the Tax Court said. Although investigations based on Plaintiffs' evidence could in principle be deductible, *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *6, Plaintiffs could not have spent money in 2011 or 2012 to investigate evidence that they did not discover until at least the following tax year. So if Plaintiffs' legal expenses in 2013 and 2014 were not related to the investigation, their expenses in 2011 and 2012 must not have been either.

The Tax Court did find that certain fees to an IT consultant were related to investigating wrongdoing by Dr. Anderson's colleague, and allowed a deduction. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *7. Even passing over the temporal problem with when the expenses were incurred, Plaintiffs do not liken those expenses to any at issue in this case. Plaintiffs' summary judgment briefing and exhibit mention the IT consultant in passing, *see, e.g.*, Pls.' Mot. for Sanctions at 4 (ECF 55), yet Plaintiffs do not identify any payments to him that should be deducted for the tax years at issue. To the extent Plaintiffs could have taken advantage of the Tax Court's ruling and identified any such expenses for the tax years at issue here, the argument is forfeited. *See DecisionPoint Corp. v. United States*, 174 Fed. Cl. 475, 482 n.2 (2024).

Instead of focusing on the nature of the expenses in this case and the Tax Court case, Plaintiffs argue that the tax years are separable based on additional evidence supposedly showing that Dr. Anderson is innocent. Dr. Anderson's alleged innocence remains the factual premise of their argument that his legal expenses are connected to his business. Tr. at 25–26, 43–44; Pls.' Opp'n at 7–9. But the argument goes nowhere.

Most obviously, one of the purposes of collateral estoppel is to *prevent* parties — except in unusual circumstances discussed below — from revisiting old decisions by producing new evidence. *See Filler v. United States*, 148 Fed. Cl. 123, 139 (2020); *see also Intellectual Ventures I LLC v. Cap. One Fin. Corp.*, 937 F.3d 1359, 1377 n.7 (Fed. Cir. 2019) (citing *Oyeniran v. Holder*, 672 F.3d 800, 807 (9th Cir. 2012)). Parties *can* show that the historical facts material to a given case are different from those

material to the previous case. *Montana*, 440 U.S. at 159. But as explained above, Dr. Anderson's guilt or innocence does nothing to distinguish the tax years.[2]

And assuming Plaintiffs get over that hurdle, the deductibility of Plaintiffs' legal expenses depends on the "origin and character of the claim underlying the expense incurred." *Dana Corp.*, 174 F.3d at 1350. The "origin and character" of a claim presumably does not depend on whether the claim is true or false — only on its nature. *Cf. Duntley v. Comm'r*, T.C. Memo. 1987-579, No. 36769-84, 1987 WL 49202 (Nov. 23, 1987) ("Neither the fact that the daughters were unsuccessful nor that their claim was baseless affects the lawsuit's nature or character."). The purpose of a given legal expense is settled at the time it is incurred and cannot logically be changed after the fact. If Plaintiffs' 2011 and 2012 legal fees were not incurred for the purpose of investigating Dr. Anderson's colleague, for example, new evidence changes nothing.

Plaintiffs purport to contest the remaining elements of collateral estoppel too. Tr. at 40. But those arguments boil down to the theory that because the issue presented here is not identical to the one before the Tax Court, it could not have been actually litigated, decided, or necessary in the Tax Court. *Id.* at 45. Because those arguments all presume that Plaintiffs win on identicality, the first element of collateral estoppel resolves the whole preclusion question. *See Arkla*, 37 F.3d at 624. If the expenses and the legal standards applicable to them were the same in every material respect from 2011 to 2014, then the tax years are not separable, and the issues here are identical to those before the Tax Court.

## III. <u>Dr. Anderson's Alleged Innocence</u>

In addition to arguing that evidence of Dr. Anderson's innocence avoids the preclusive effect of the Tax Court decision, Plaintiffs also argue that it constitutes "special circumstances" that justify a collateral estoppel exception . Pls.' Opp'n at 23–27, 29. Courts can bypass collateral estoppel when special circumstances warrant. *Montana*, 440 U.S. at 155; *Alexander Hosp., Inc. v. United States*, 5 Cl. Ct. 62, 68–69 (1984); *Baldwin Park Comm. Hosp. v. United States*, 4 Cl. Ct. 347, 352 (1984). But because this Court cannot reconsider Dr. Anderson's guilt, Plaintiffs' evidence serves no purpose here.

If Dr. Anderson is guilty of molesting a child in his home during tutoring or martial arts sessions, it is hard to imagine how his legal expenses could have had the required nexus to his medical practice or research. *See Gilmore*, 372 U.S. at 48–49; *Swift v. Comm'r*, T.C. Memo. 2024-13, No. 13705-16, 2024 WL 378671, at *27 (Feb. 1, 2024); *Dancer v. Comm'r*, 73 T.C. 1103, 1108 (1980) (citing *Kornhauser v. United*

---

[2] It might be relevant if it could establish that Dr. Anderson really is innocent. But as discussed below, I cannot consider it for that purpose.

*States*, 276 U.S. 145, 153 (1928)); *Wollesen v. Comm'r*, T.C. Memo. 1987-611, No. 25805-85, 1987 WL 27101 (Dec. 16, 1987). The Tax Court's decision in that regard — which is preclusive as discussed above — lines up with how courts historically examine whether charged conduct is connected to a taxpayer's business. *Compare Siket v. Comm'r*, T.C. Memo. 1978-124, No. 2690-77, 1978 WL 2822 (Mar. 29, 1978) (legal fees paid by a police officer to defend against a charge of off-duty criminal assault were not deductible, despite negatively impacting his trade), *and Argyle v. Comm'r*, T.C. Memo. 2009-218, No. 6820-08, 2009 WL 2972888, at *1 (Sep. 17, 2009) (disallowing deduction of CPA's legal fees incurred defending charges for kissing a client's employee at his home, forty miles from his business), *with Comm'r v. Tellier*, 383 U.S. 687, 690–93 (1966) (permitting deduction of legal expenses incurred in defending criminal charges directly arising from the taxpayer's securities business), *and Silberman v. United States*, 40 Fed. Cl. 895, 906 (1998) (denying summary judgment where the nexus between the taxpayer's money-laundering conviction and his business raised a genuine issue as to the deductibility of legal expenses).

What opens up the possibility of a business connection, according to Plaintiffs, is the chance that he was framed for purposes of IP theft. In that situation, his conviction — and the related legal expenses — could have arisen from his business. *See Gilmore*, 372 U.S. at 47–49. But Dr. Anderson was convicted by a state jury, and his conviction remains final after extensive post-conviction proceedings in state and federal court. *Anderson I*, 144 Cal. Rptr. 3d 606; *Anderson II*, 2013 WL 4759680; *Anderson IV*, 2017 WL 379400.

The Tax Court explained that it could not second-guess Dr. Anderson's conviction. *Anderson V*, T.C. Memo. 2023-42, 2023 WL 2660324, at *5 n.11. This Court cannot do so either. The Court of Federal Claims has no jurisdiction over criminal matters, *Kurt v. United States*, 103 Fed. Cl. 384, 388 (2012) (citing *Joshua v. United States*, 17 F.3d 378, 379–80 (Fed. Cir. 1994)),[3] cannot review criminal convictions, *Reed v. United States*, 25 Fed. App'x 903, 904 (Fed. Cir. 2001), and cannot hear appeals from the decisions of state or federal courts, *Double Lion Uchet Express Tr. v. United States*, 149 Fed. Cl. 415, 420 (2020). For all intents and purposes, this Court must assume that Dr. Anderson is guilty — regardless of Plaintiffs' claims to the contrary.

Plaintiffs do not raise any alternative arguments that might hold water if Dr. Anderson is guilty. They do not entertain the possibility that Dr. Anderson was

[3] This Court does have jurisdiction over claims for compensation based on unjust convictions for crimes against the United States. *Gibson v. United States*, 161 Fed. Cl. 249, 253 (2022) (citing 28 U.S.C. § 1495)).

entrapped or that someone exploited his crime for business reasons. Tr. at 32. Plaintiffs' counsel suggested that this Court can consider whether the charges were false without considering whether Dr. Anderson is innocent, Tr. 33–34, but I cannot understand how (or even what that might mean), and counsel provided no authority to illustrate or justify it.

This Court may look to the nature of charged conduct and decide whether it is connected to the taxpayer's business. What it may not do is decide or assume, after conviction, that the charged conduct did not take place.[4] Because that is essentially what Plaintiffs are asking this Court to do, their evidence serves no permissible purpose.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF 46) is **GRANTED**. The case is **DISMISSED**.

The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED**.

s/ Stephen S. Schwartz
STEPHEN S. SCHWARTZ
Judge

[4] I do not reach the hypothetical question of whether Dr. Anderson's legal expenses could be deducted if he were ever exonerated.